UNITED STATES BANKRUPTCY COURT
for the
DISTRICT OF MASSACHUSETTS

============================================
                                            )
In re:                                      ) Chapter 7
                                            )
BANK OF NEW ENGLAND CORPORATION,            ) Case No. 91-10126-WCH
                        Debtor              )
                                            )
============================================

PRELIMINARY DECISION ON REMAND REGARDING THE
TRUSTEE'S MOTION FOR ORDER
AUTHORIZING A FOURTH INTERIM DISTRIBUTION

Introduction

On May 23, 2001, Dr. Ben S. Branch, Chapter 7 Trustee (the "Trustee") of Bank of New England Corporation ("BNEC" or "the Company") moved for authority to make a fourth interim distribution in the amount of $11,000,000 to the creditors of the estate (the "Motion"). As to the recipients of this distribution, the Trustee averred:

> Pursuant to the contractual subordination provisions of BNEC's indentures, the Senior Bondholders have been paid in full. Accordingly, on the date of the Fourth Interim Distribution, all payments to which the holders of senior indebtedness would be entitled shall be paid to the Junior Indenture Trustees for distribution to the holders of BNEC's subordinated indebtedness.

*Motion*, ¶16.

HSBC Bank USA, as successor to Marine Midland Bank, N.A., and The Chase Manhattan Bank, as successor to Manufacturers Hanover Trust Company (collectively, the "Senior Indenture Trustees") filed an objection to the proposed distribution (the

1

"Objection"). U.S. Bank Trust National Association and Chemical Bank Delaware (collectively, the "Junior Indentures Trustees") joined in support of the Motion. I took the Motion under advisement and ultimately granted it.[1] The United States District Court for the District of Massachusetts affirmed.[2] The First Circuit Court of Appeals "vacated the decision of the district court and remanded with instructions that the district court vacate the judgment of the bankruptcy court and remand the matter to that tribunal for further proceedings consistent with this opinion."[3] The district court did just that.[4]

The Trustee is prepared to make payment to whomever is ruled entitled thereto by final court order; he has no substantive interest in the outcome of the litigation. Given the principles enunciated by the First Circuit, both the Senior Indenture Trustees and the Junior Indenture Trustees expressed doubts as to where the burden of proof lies in this litigation. I bifurcated the issue of the burden of proof, held a hearing and received post-hearing memoranda on that preliminary matter.[5] I issue this decision to

---

[1] *In re* Bank of New England Corp., 269 B.R. 82 (Bankr. D. Mass. 2001).

[2] HSBC Bank USA v. Bank of New England Corp. (*In re* Bank of New England Corp.), 295 B.R. 419 (D. Mass. 2003).

[3] HSBC Bank USA v. Branch (*In re* Bank of New England Corp.), 364 F.3d 355, 368 (1st Cir. 2004), *cert. denied sub nom.* U.S. Bank Nat'l Ass'n v. HSBC Bank USA, 543 U.S. 926 (2004).

[4] *In re* Bank of New England Corp., Case No. 91-10126-WCH, Docket No. 1614 (hereinafter all docket references will be to this case).

[5] There may never be a trial before me. On May 17, 2006, a Senior Indenture Trustee filed a motion to withdraw the reference. Docket No. 1364. The motion was transmitted to the District Court the following day. Docket No. 1870. A hearing was held in the District Court on November 27, 2006 but no decision has yet been rendered.

2

set the stage for the ultimate factual hearing. I iterate here the background facts and travel of the case, drawn from the prior decisions.

## Facts

BNEC filed this Chapter 7 case over fifteen years ago. Prior to filing, BNEC had issued six separate issues of indenture debt, aggregating $705,972,000 in principal amount. Three issues are entitled to the benefit of contractual subordination provisions, and will be described as the Senior Debt. The remaining three issues (the "Junior Debt") contractually subordinate payment in accordance with the terms of their indentures (the "Junior Indentures").

Through prior interim distributions, the Trustee has paid to the Senior Debt all allowed claims for principal and pre-petition interest plus post-petition fees and expenses incurred through the date of the last such distribution. The Trustee has created a reserve to cover any future fees and legal expenses. He proposes to make the next interim distribution on the Junior Debt. In the Objection, the Senior Indenture Trustees assert that the distribution should be first applied to post-petition interest due on the Senior Debt.

Each of the Junior Indentures provides that it is governed by New York law and contains a provision virtually identical to the following, which is quoted from one such indenture:

> [E]ach Holder likewise covenants and agrees by his acceptance thereof, that the obligations of the Company to make payment on account of the principal and interest on each and all of the Notes shall be subordinate and junior, *to the extent and in the manner hereinafter set forth*, in right of payment to the Company's obligations to the holders of Senior Indebtedness of the Company. (emphasis added).

3

The "extent and manner hereinafter set forth" includes the following provision:

> The Company agrees that upon . . . any payment or distribution of assets of the Company of any kind or character, whether in cash, property or securities, to creditors upon any dissolution or winding up or total or partial liquidation or reorganization of the Company, whether voluntary or involuntary or in bankruptcy, insolvency, receivership, conservatorship or other proceedings, all principal (and premium, if any), sinking fund payments and interest due on or to become due upon all Senior Indebtedness of the Company *shall first be paid in full*, or payment thereof provided for in money or money's worth in accordance with its terms, before any payment is made on account of the principal or interest on the indebtedness evidenced by the [Junior] Notes due and owning at the time.... (emphasis added).

## Issue

In my earlier decision, I opined that the issue resolved itself into the meaning of the emphasized phrase "shall first be paid in full." I ruled that the outcome would depend upon the application of the so-called Rule of Explicitness to the language used in the Junior Indentures. That principle is generally traced to *Bankers Life Co. v. Manufacturers Hanover Trust Co. (In re Kingsboro Mortgage Corp.)*.[6] The language before the court in that case was strikingly similar to that quoted above:

> In the event of any insolvency, bankruptcy liquidation, reorganization or other similar proceedings ... then all principal and interest on all Senior Debt *shall first be paid in full* ... before any payment on account of principal or interest is made upon the Notes (junior indebtedness).[7]

The Court of Appeals held that the quoted language "is insufficiently express to

---

[6] 514 F.2d 400 (2d Cir. 1975).

[7] 514 F.2d at 401 (emphasis added).

relate to post-bankruptcy interest."[8]

At that time, of course, the operative law was the Bankruptcy Act, but its § 63(a)(1),[9] like the present law's § 502(b)(2),[10] denied creditors post-petition interest. Missing from the Act, however, was a provision comparable to the Bankruptcy Code's § 510(a): "A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law."

The addition of § 510(a) led to a debate as to whether the Rule of Explicitness had been overruled. A scholarly examination of that issue can be found in *Chemical Bank v. First Trust of New York (In re Southeast Banking Corp.)*.[11] Finding itself in doubt, the Eleventh Circuit certified the following question to the New York Court of Appeals:

---

[8] *Id.* See also *In re Time Sales Fin. Corp.*, 491 F.2d 841, 844 (3d Cir. 1974) ("If a creditor desires to establish a right to post-petition interest and a concomitant reduction in the dividends due to subordinated creditors, the agreement should clearly show that the general rule that interest stops on the date of the filing of the petition is to be suspended, at least vis-à-vis these parties.")

[9] "Debts of the bankrupt may be proved and allowed against his estate which are founded upon (1) a fixed liability, as evidence by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition by or against him, whether then payable or not, with any interest thereon which would have been recoverable at that date...." 11 U.S.C. § 63a (Repealed).

[10] "(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . (2) such claim is for unmatured interest. . . ." 11 U.S.C. § 502(b)(2).

[11] 156 F.3d 1114 (11th Cir. 1998).

What, if any, language does New York law require in a subordination agreement to alert a junior creditor to its assumption of the risk and burden of the senior creditor's post-petition interest?[12]

The New York Court of Appeals responded that:

In accordance with the Rule of Explicitness, New York law would require specific language in a subordination agreement to alert a junior creditor to its assumption of the risk and burden of allowing the payment of a senior creditor's post-petition interest demand.[13]

Based upon these precedents I held that "the imposition of bankruptcy truncates the power of the contractual 'due or to become due' phrase. Interest will no longer become due."[14]

The opinion of the Court of Appeals can be briefed as follows:

1. The issue framed by the litigants — whether the language of the subordination provisions satisfies the Rule of Explicitness — is not the correct question.[15]

2. Prior to the adoption of the Bankruptcy Code, there was no specific provision of law mentioning subordination agreements. They were enforced through the bankruptcy court's equitable powers.[16] The Rule of Explicitness "evolved into a requirement that only unequivocal language could overcome the generic bar on recovery of post-petition interest."[17]

3. The adoption of § 510(a), providing that a subordination agreement is

---

[12] *Id.* at 1125.

[13] *Chemical Bank v. First Trust of New York (In re Southeast Banking Corp.)*, 93 N.Y.2d 178, 186, 710 N.E.2d 1083, 1088 (1999).

[14] 269 B.R. at 86.

[15] 364 F.3d at 361.

[16] *Id.* at 362.

[17] *Ibid.*

6

enforceable to the same extent as under applicable nonbankruptcy law, supercedes for former equitable powers of the bankruptcy court and "means that the enforcement of subordination provisions is no longer a matter committed to the bankruptcy courts' notions of what may (or may not) be equitable."[18]

4. State law will determine the meaning of the phrase "applicable nonbankruptcy law."[19]

5. The Rule of Explicitness can have vitality only if it can be found as part of the state law governing contractual subordination.[20] "If—and only if—the Rule of Explicitness is such a general principle can it be given effect in this case"[21] and "the near-total absence of authority is compelling proof that the Rule of Explicitness is not part of New York's general contract law."[22]

6. The phrase at issue is ambiguous.[23] The words are "lacking in certitude as to whether they actually provide for the payment of post-petition interest on the Senior Debt prior to any payment referable to the Junior Debt. New York law requires that this amphiboly be resolved through a contextual examination of the parties' intent, taking full account of the surrounding facts and circumstances."[24]

7. We remand for factfinding for the parties' intent vis-à-vis post-petition interest.[25]

---

[18] *Ibid.*

[19] *Id.* at 363.

[20] *Id.* at 363-364.

[21] *Id.* at 364.

[22] *Id.* at 365.

[23] *Id.* at 367.

[24] *Ibid.* An amphiboly occurs when the construction of a sentence allows it to have two different meanings. IRVING M. COPI AND CARL COHEN, INTRODUCTION TO LOGIC (8th ed. 1990), pg 114.

[25] *Id.* at 368.

## Positions of the Parties

The Senior Indenture Trustees argue that they do not have the burden of proof as they are not parties to the Junior Indentures, but, as third party beneficiaries of those indentures, the terms must be construed in their favor. Further they assert that as the Junior Indenture Trustees seek to limit the plain language of the Junior Indentures, they carry the burden of proof as to that issue.[26] The Junior Indenture Trustees counter each of these arguments.[27] The parties also disagree as to the impact of the First Circuit's statement that the Rule of Explicitness is a "dead letter"[28] upon the further deliberations in this case.[29]

## Discussion

To repeat, this decision relates only to the question of burden of proof in the evidentiary hearing on the Motion. The Rule of Explicitness having been at least *prima facie* eliminated from consideration by the decision of the First Circuit, I must determine what rule of general application the New York courts would apply to the facts of the current controversy. I conclude that those courts would treat the issue of one of interpleader. Turning to my traditional practical guide to matters of equity, I find:

> One in possession of property by which he makes no claim as a beneficial owner, but which is or may be claimed by more than one whose assertions conflict, one who is in substances a stakeholder, or who is

---

[26] Docket No. 1921.

[27] Docket No. 1935.

[28] 364 F.3d at 359.

[29] Docket No. 1935 (Junior Indenture Trustees); Docket No. 1937 (Response of Senior Indenture Trustees).

Case 91-10126    Doc 1977    Filed 01/09/07    Entered 01/10/07 14:38:41    Desc Main
                Document      Page 9 of 10

indebted, but is uncertain to whom the obligation is legally or equitably due, may find himself exposed to a consequential hazard against which there is no adequate legal protection: (1) because he must decide between the conflicting claims at his peril, with consequent possibility of a double liability for a single debt; (2) because he may be subjected to the annoyance and expense of a plurality of suits. These two hazards, usually both present, entitle one so situated to equitable relief, through the remedy of interpleader, based upon a recognition of the injustice of requiring one not responsible for the predicament in which he finds himself to choose between conflicting claims.[30]

Having concluded that the issue should be treated as one akin to an interpleader action, I can then proceed directly to the preliminary issue upon which direction is sought. Once again, a basic resource provides the guide:

Each claimant in an interpleader action has the burden of establishing his or her own claim or right to any part of the impleaded money, and relative priority as to all other claimants. Each claimant must show his or her entitlement to the disputed funds by a preponderance of the evidence. All claimants must recover on the strength of their own title, rather than on the weakness of that of the adversary.[31]

---

[30] 2 FRED F. LAWRENCE, EQUITY JURISPRUDENCE 1016-17 (1929)

[31] 48 C.J.S. Interpleader § 36 (2006) (footnotes omitted). *See also* Conn. Car Rental, Inc. v. Prime One Capital Co., LLC, 247 F.Supp.2d 158, 165 (D. Conn. 2003), citing Midland Ins. Co. v. Friedgood, 577 F.Supp. 1407, 1411 (S.D. N.Y. 1984).

## Conclusion

These rules should provide the guidance sought by the parties. While not strictly within the question asked of me, I will volunteer that the Senior Indenture Trustees, having objected to the Trustee's proposed disposition, will present their case first.

As this decision is preliminary to consideration of the Motion on its merits, no order will issue.

William C. Hillman
United States Bankruptcy Judge

Dated: January 9, 2007