UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 06-10941-GAO

IN RE BANK OF NEW ENGLAND CORPORATION

MEMORANDUM AND ORDER
February 6, 2007

O'TOOLE, D.J.

I.  Introduction and Procedural History

In 1991, the Bank of New England Corporation ("BNEC") filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. Dr. Ben S. Branch serves as Chapter 7 Trustee of the BNEC bankruptcy estate. On May 23, 2001, he filed with the bankruptcy court a motion for an order authorizing a fourth interim distribution from the estate for the benefit of certain creditors. Other creditors objected to the allowance of the motion, and those creditors have moved to withdraw the reference of the matter to the bankruptcy court. It is that motion that is the subject of this memorandum and order.

In the years prior to its bankruptcy filing, BNEC issued six separate series of debt instruments. JPMorgan Chase Bank, N.A. and HSBC Bank USA, National Association serve as Indenture Trustees (collectively the "Senior Indenture Trustees) for three offerings that have the benefit of subordination provisions (the "Senior Debt"). Chase Bank USA, National Association and U.S. Bank National Association serve as Indenture Trustees (collectively the "Junior Indenture Trustees") for the remaining three offerings (the "Junior Debt"), all of which are contractually subordinated to the Senior Debt by provisions in the relevant trust indentures. Both the Senior and Junior Indenture

Trustees filed formal proofs of claim in BNEC's bankruptcy case. The Senior Indenture Trustees' claim was for the outstanding principal amount of the debt, interest on the debt accrued prior to the petition date, pre-and post-petition fees and administrative expenses, and post-petition interest.

As a result of prior distributions, the Senior Indenture Trustees have had all of their claims paid except for their claim for post-petition interest. In May 2001, the Chapter 7 Trustee, concluding that he had satisfied the obligations owed the Senior Indenture Trustees, filed a motion for an order authorizing him to make a fourth distribution of approximately $11 million to the Junior Indenture Trustees who had yet to receive payment of any portion of their $225 million claim. The Senior Indenture Trustees filed an objection to the motion with the bankruptcy judge, arguing that the subordination language in the indentures provided that they were entitled to post-petition interest on the Senior Debt before any money could be paid out to the Junior Indenture Trustees. The bankruptcy judge overruled the objection and authorized the fourth distribution, see In re Bank of New Engl. Corp., 269 B.R. 82, 86 (Bankr. D. Mass. 2001), and on appeal this Court (Stearns, D.J.) affirmed, see HSBC Bank USA v. Bank of New Engl. Corp., 295 B.R. 419 (D. Mass. 2003). Both courts found the so-called "Rule of Explicitness" (or "the Rule") to be controlling.[1]

The Senior Indenture Trustees appealed, and the First Circuit reversed and remanded. See HSBC Bank USA v. Branch, 364 F.3d 355 (1st Cir. 2004). In its opinion, the court of appeals held that the enactment of § 510(a) of the Bankruptcy Code vitiated the Rule of Explicitness except to the

---

[1] The Rule of Explicitness is an equitable concept requiring that "a subordination agreement show clearly 'that the general rule that interest stops on the date of the filing of the [bankruptcy] petition is to be suspended.'" HSBC Bank USA v. Branch, 364 F.3d 355, 362 (1st Cir. 2004) (quoting Matter of Time Sales Fin. Corp., 491 F.2d 841, 844 (3d Cir. 1974)).

2

extent that the Rule might be "part and parcel" of a given state's general contract law.[2] Id. at 363-364. Because it was undisputed that New York law governed the indentures, the court next inquired whether the Rule of Explicitness was part of New York's general law of contracts. Concluding that it was not, the court rejected the lower courts' rulings, which had been based largely on application of the Rule.

The court then proceeded to apply New York's general principles of contract interpretation in an attempt to determine the meaning and effect of the subordination provisions. It focused on the language in the provisions which required full payment of "interest due or to become due" upon occurrence of certain events, including bankruptcy. Finding that language to be ambiguous—at least in the bankruptcy context where all interest is considered due as of the filing date, see 11 U.S.C. §§ 101(5)(a), 502(b), and interest accruing post-petition is generally not recoverable at all, see id. § 520(b)(2)—the court remanded the case so that the bankruptcy court could develop a factual record on the question of the parties' intent when drafting the provisions. See HSBC, 364 F.3d at 367-68.

After the First Circuit remanded the case, the bankruptcy judge set a discovery schedule and, some months after the schedule was set, the parties agreed to a stay in order to explore the possibility of settlement. A period of approximately eleven months passed between the remand and the point at which the parties began serious settlement discussions. Those negotiations broke down in March 2006, and the bankruptcy court lifted the stay of discovery at the end of that month.

Soon thereafter, the Senior Indenture Trustees moved to withdraw the reference, arguing that there was cause to do so because they demanded a jury trial and did not consent to such a trial being

---

[2] The Court concluded that it would violate § 510(a) and "set state and federal law on a collision course" if states were able to craft their own, bankruptcy-specific canons of interpretation. HSBC, 364 F.3d at 366.

3

conducted in the bankruptcy court. The Junior Indenture Trustees opposed the motion, arguing that the jury trial demand was untimely and that the Senior Indenture Trustees are not entitled to a jury trial.

II.  Discussion of the Issues Presented

   A.  *Withdrawal of the Reference*

Pursuant to 28 U.S.C. § 157(a), this Court has exercised its authority to refer all bankruptcy matters to the district's bankruptcy judges. See D.Mass. R. 201. However, a district court has the authority to withdraw the reference "on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). See Gray v. Solvay Polymers, Inc. (In re Dooley Plastic Co., Inc.), 182 B.R. 73, 80-81 (D. Mass 1994); see also FTC v. Am. Inst. for Research and Dev., 219 B.R. 639, 647 (D. Mass. 1998) (stating "withdrawal of a reference is to be reserved for an unusual circumstance."); United States v. Kaplan, 146 B.R. 500, 502-503 (D. Mass. 1992) (stating withdrawal may be appropriate where necessary to preserve a higher interest and cautioning that § 157(d) should be applied sparingly "so that the exception does not swallow the rule").

What may constitute "cause" supporting withdrawal is not specified by the statute, but numerous courts have found that cause to withdraw exists where a party has a right to a jury trial as to the matter to be adjudicated and does not consent to having a bankruptcy judge conduct the trial.[3] See, e.g., Nickless v. Creare, Inc. (In re Haverhill Tech. Group), 310 B.R. 487, 481 n.7 (Bankr. D. Mass. 2004) (citing 28 U.S.C. § 157(e) and D. Mass. Local Rule 202 to support its conclusion that

---

[3] Title 28 of the United States Code, § 157(e) provides: "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and *with the express consent of all the parties*." (emphasis added).

4

"[b]ecause the Defendants do not consent to a jury trial in this Court, the adversary proceeding must be tried in the district court."); see also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993); NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.), 203 B.R. 905, 908 (D. Del. 1996). Consequently, if the Senior Indenture Trustees are entitled to a jury trial and have not waived or otherwise lost that right, their motion for withdrawal of the reference should be granted. But that is not the case.

B. *Failure to Make a Timely Demand for a Jury Trial*

The Senior Indenture Trustees have lost their right to a jury trial because they did not demand one in a timely fashion. Local Bankruptcy Rule 9015-1 provides in relevant part:

> (a) In any bankruptcy case or proceeding, issues triable by jury shall be tried by a jury if a party timely demands a jury trial in accordance with the provisions of this rule. . . .
>
> (b) Any party may demand a jury trial of any issue triable by jury by filing with the Court and serving upon the other parties a written demand for jury trial no later than the deadline for filing the answer or the reply to a counterclaim or cross claim in an adversary proceeding, or in a contested matter no later than the deadline for filing the initial responsive pleading or opposition. . . . The failure of a party to file and serve a demand constitutes a waiver of the right to trial by jury.

Local Bankr. R. 9015-1 (a) and (b).

Strict adherence to Rule 9015-1 would require the conclusion that the Senior Indenture Trustees' jury demand was untimely because it was not made at the time they filed their objection to the Chapter 7 Trustee's fourth distribution motion in May 2001. Their objection to that motion would constitute the "initial responsive pleading or opposition" within the meaning of Local Bankruptcy Rule 9015-1(b). The Senior Indenture Trustees contend, however, that the need for a

5

trial – and therefore a trial by jury – was not apparent until the First Circuit ruled that resolution of the dispute between the Senior and Junior Indenture Trustees required further fact finding regarding the parties' intent at the time they drafted the subordination provisions.

Even so, the jury demand was untimely. The First Circuit issued its opinion in April, 2004, and this Court remanded the case to the bankruptcy judge approximately a month later. The Senior Indenture Trustees did not make their jury demand until they filed the present motion to withdraw the reference in May 2006, two years later. They now argue that the two year delay was not unreasonable because at least a portion of that time was spent in settlement negotiations with the Junior Indenture Trustees, and they could not in good faith negotiate settlement while simultaneously demanding a jury trial. There are at least two serious flaws with this argument. First, it is fatuous to suggest that serious negotiations among sophisticated parties would be prejudiced or imperiled because any of them took care to preserve a right by claiming it within the time required by law. Moreover, their argument blithely ignores the fact that almost a year elapsed between the time the First Circuit issued its opinion and the commencement of the settlement negotiations. No reason is offered why they could not have made their demand at any point during that period.

If there is to be a rule that jury trial claims must be timely, then that rule has to be enforced. There will be occasions when for good reasons failure to comply will be deservedly excused, but this is not one of them. Because they failed timely to claim a trial by jury as to factual issues presented by their opposition to the motion for approval of the fourth distribution, the Senior Indenture Trustees have waived any right to a jury trial they may have had.

6

C.   *Entitlement to a Jury Trial*

Even if I were to conclude that the Senior Indenture Trustees had not waived the right to a jury trial by failing to demand one in a timely fashion, there would still be a question as to whether they would be entitled to such a trial on the issues raised by the motion for approval of the fourth distribution. Both sides in this dispute devote a great deal of attention to the question whether the Senior Indenture Trustees would be entitled to a jury trial under the three-part test enunciated in Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989), which requires a court to analyze whether: (1) the party seeking a jury trial would be entitled to one at common law; (2) the remedies sought are legal rather than equitable in nature; and (3) Congress has withdrawn jurisdiction over that type of action from courts of law and assigned it exclusively to non-Article III tribunals sitting without juries. Id. at 42. This is can be a complex inquiry, one made all the more difficult here by the somewhat unusual procedural posture of this case. Be that as it may, the issue of the Senior Indenture Trustees' right to a jury trial is effectively answered for us by Langenkamp v. Culp, 498 U.S. 42 (1990).

In Langenkamp, the Supreme Court decided, in brief, that whether a party was entitled to a jury trial in a preference action brought by the trustee of the estate turned on whether that party had triggered the claims allowance process of the bankruptcy court by filing a proof of claim against the estate. 498 U.S. at 44-45; see also Granfinanciera, 492 U.S. at 58 (stating "a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate."). The Court concluded that the respondents, who had timely filed proofs of claim, had submitted themselves to the equitable jurisdiction of the bankruptcy court and therefore were no longer entitled to a jury trial. Langenkamp, 498 U.S. at 45.

7

There is no question that the Senior Indenture Trustees filed proofs of claim with the bankruptcy court in May 1991, nor is there any dispute that their claims included a demand for post-petition interest on the debt. (Decl. of Dianne F. Coffino, Ex. O).[4] So even if the present dispute

---

[4] The Senior Indenture Trustees have taken other steps which also establish that they have submitted the matter of their claims to the bankruptcy court for resolution. Prior to making the first distribution from the estate, the Chapter 7 Trustee sought a determination from the court as to whether the trust indentures for the Junior Debt required distributions allocable to the Junior Debt holders, but due to the Senior Debt holders by virtue of the subordination provisions, to be made through the Junior Indenture Trustees. The Senior Indenture Trustees objected to that approach because distributions made in such a manner would be subject to charging liens held by the Junior Indenture Trustees for their outstanding fees and expenses. The Senior Indenture Trustees argued, to the bankruptcy judge, that no distributions should be made to the Junior Indenture Trustees until the Senior Debt had been paid in full.

This dispute was resolved when the parties reached a compromise and submitted a proposed order which read, in relevant part:

> (A) The interpretation of contractual subordination provisions involves the adjustment of the debtor-creditor relationship, determinations of the priority of liens and administration of the estate and, therefore, falls within the ambit of 28 U.S.C. § 157(b)(2)(A), (K) and (O).
>
> (B) Th[e Bankruptcy] Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).
> . . . .
>
> (D) The dispute between the Junior Trustees and the Senior Trustees involves, among other things, the validity and interpretation of contractual subordination provisions in the Indentures and the settlement of this dispute is essential to the administration of the estate.
>
> (E) Determining the order of priority of the claims of the Indenture Trustees is an integral and historic bankruptcy function and is an essential element of bankruptcy law.

Order Authorizing the Allowance of Indenture Trustee Claims, Coffino Decl., Ex. D.

8

over who is entitled to receive the proposed distribution could be characterized as a "legal" dispute to which the right to a jury trial would normally attach under Granfinanciera,[5] I conclude that the Senior Indenture Trustees have submitted themselves and the resolution of this issue to the equitable jurisdiction of the bankruptcy court, thereby foreclosing any right to a jury trial.

The Senior Indenture Trustees' attempt to distinguish this case from Langenkamp by invoking the rationale articulated by the Second Circuit in Germain v. Connecticut Nat'l Bank, 988 F.2d 1323 (2d Cir. 1993). The Senior Indenture Trustees assert that Germain appropriately interprets the holding of Langenkamp to be limited to those circumstances where "a court must resolve any preference issues the trustee may raise" before it can *allow* a claim. Germain, 988 F.2d at 1327 (underline in original, italics added). Because their claims have been allowed already, the Senior Indenture Trustees argue that there "is simply no 'claims allowance process' involved here" and that Langenkamp is therefore inapposite.

---

While the Senior Indenture Trustees correctly point out that this settlement took place long ago and resolved issues distinct from those in the present case, many of the basic principles they recognized in the proposed order are pertinent here, particularly including the acknowledgment that ordering the priority of claims is "an integral and historic function bankruptcy function" and that interpretation of contractual subordination provisions "falls within the ambit" of § 157(b) and is a core function.

[5] The Senior Indenture Trustees assert that their claim is a straightforward contractual dispute seeking monetary damages and so is "legal" (and also non-core). Perhaps, but they do not seek "monetary damages" from the Junior Indenture Trustees in the usual contract-claim sense, but rather a distribution from the estate with priority over the contract claims of the Juniors. Their position may just as plausibly be characterized as a claim for an authoritative declaration that the subordination provisions in the indentures require their claim for post-petition interest be given priority over the Junior Indenture Trustees' claim. Likely for these reasons, other courts have held that the enforcement of subordination provisions is a core bankruptcy function. See, e.g., Resolution Trust Corp. v. Best Prods. Co., 68 F.3d 26, 31 (2d Cir. 1995); Mellon Bank, N.A. v. Union Nat'l Bank of Pittsburgh, 118 B.R. 31, 34-35 (Bankr. W.D. Pa. 1990).

9

Their argument is premised on too narrow a reading of both Langenkamp and Germain. Specifically, they highlight some language in Germain that is supportive of their argument, but ignore entirely that the Germain court, discussing the import of Granfinanciera and Langenkamp, stated:

> It is reasonable that a creditor or debtor who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process, such as those involving the determination of who is a valid creditor *and which creditors are senior in the creditor hierarchy.*

Germain, 988 F.2d at 1329-1330 (emphasis added).

The Senior Indenture Trustees filed formal proofs of claim in the BNEC bankruptcy and, more germanely, filed an opposition to the motion for approval of the distribution with the bankruptcy judge that seeks a determination that their claim for post-petition interest should take priority over another creditor's claim. Resolution of this issue is "vital to the bankruptcy process," and in these circumstances, Langenkamp is controlling. Id. The Senior Indenture Trustees do not have a right to a jury trial.

D. *No Other Cause Exists for Discretionary Withdrawal*

There are no other grounds for withdrawing the reference. To the extent that the Senior Indenture Trustees claim that this dispute is non-core, I disagree. The interpretation and application of the subordination provisions is necessary in order to determine whether the Senior Indenture Trustees' claim for post-petition interest should take priority over the claim of the Junior Indenture Trustees. Determination of the priority of liens implicates the administration of the estate and is a core proceeding within the meaning of 28 U.S.C. § 157(b). See 28 U.S.C. §§ 157(b)(2)(A) and (b)(2)(K); see also supra notes 4 & 5. The mere fact that resolution of the dispute turns on the application of state law does not make any difference. See 28 U.S.C. § 157(b)(3) (mandating that "[a]

10

determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."); Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.), 815 F.2d 165, 168, 169 (1st Cir. 1987) (stating that "Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits" and that "it is the nature of the proceeding—its relation to the basic function of the bankruptcy court—not the state or federal basis for the claim, that makes the difference" when determining whether a proceeding is core).

Even if the proceeding were non-core, I still would decline to exercise my discretion to withdraw the reference. It is true that the rulings of bankruptcy judges in non-core matters are subject to *de novo* review by the district courts and that this has, in some circumstances, been considered grounds for withdrawal of the reference. The justification for such decisions has typically been that bypassing the bankruptcy court will promote judicial efficiency and economy, see Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993) (discussing cases). That would not be the case here, however, where the bankruptcy judge has extensive experience with the case generally and the series of disputes between these parties more specifically. The present proceeding will benefit greatly from the attention of the bankruptcy court most familiar with it and will be resolved most expeditiously in that forum.

11

III. <u>Conclusion</u>

For all of the foregoing reasons, the Senior Indenture Trustees' motion for withdrawal of the reference is DENIED.

It is SO ORDERED.

| | |
|---|---|
| <u>February 6, 2007</u><br>DATE | <u>/s/ George A. O'Toole, Jr.</u><br>DISTRICT JUDGE |